**THIRD DIVISION
DOYLE, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 4, 2025**

# In the Court of Appeals of Georgia

A24A1781. HUTCHINS v. THE STATE.

WATKINS, Judge.

Marcus Hutchins appeals from an order denying his amended motion for new trial after a jury found him guilty of possession with intent to distribute marijuana, methamphetamine, and a controlled substance (oxycodone), crossing a prison guard line with drugs, and furnishing prohibited items to inmates.[1] On appeal, Hutchins argues that the evidence was insufficient to support the controlled substance conviction because the State did not perform chemical testing of the pills. Hutchins alternatively argues that his trial counsel was ineffective for failing to object to

---

[1] See OCGA §§ 16-13-30 (b), (j); 42-5-15 (a); 42-5-18 (b). A sixth count (possession of more than one ounce of marijuana) merged with the possession of marijuana with intent to distribute for sentencing purposes.

testimony identifying the pills as oxycodone. For the reasons set forth infra, we disagree and affirm.

Viewed in the light most favorable to the verdict,[2] the evidence at trial showed that around 11 a.m. on December 16, 2018, Sheriff's Deputy Jason Howell observed Hutchins driving in a restricted area near a prison. Howell pulled over Hutchins, who told him that he was from Savannah and had taken a "wrong turn."

Officers subsequently searched Hutchins's car and discovered five pounds of tobacco, two small baggies containing just under two ounces of marijuana inside two Latex gloves, several cell phones, a small bag of a white, crystal-like substance that was later confirmed to be methamphetamine, and eight blue pills. Hutchins stated that the tobacco found in the backseat was for his personal use but claimed not to know how the items in the front floorboard (the marijuana, methamphetamine, and pills) got there.

Following Hutchins's arrest, Agent Phil Davis with the Department of Corrections determined that the blue pills were 30-milligram strength oxycodone (a controlled substance) by doing a "logo identification" using "drugs.com." Laura

---

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Zimmerman, a forensic chemist with the Georgia Bureau of Investigation ("GBI") crime lab, testified that the crystal substance tested positive for methamphetamine. She did not do any chemical testing on the blue pills, however, but testified that their appearance was "consistent with what the logo identification of that pharmaceutical prep would be for [o]xycodone."

After the jury found him guilty on all counts, Hutchins filed a motion for new trial, arguing in part that the evidence was insufficient to support the controlled substance conviction and that counsel was ineffective for failing to object to testimony identifying the pills as oxycodone in the absence of chemical testing. Following a hearing, the trial court denied Hutchins's motion. This appeal followed.

1. Hutchins argues that the evidence was not sufficient to support his conviction for possession of oxycodone either as a matter of constitutional due process or under OCGA § 24-14-6[3] because GBI's forensic chemist did not chemically test the pills in question. Because counterfeit pills could look the same, Hutchins contends that the State did not prove beyond a reasonable doubt that the pills were a controlled substance. We disagree.

---

[3] Hutchins cites to former OCGA § 24-4-6, which contained comparable provisions to OCGA § 24-14-6, effective January 1, 2013.

When evaluating a due process challenge to the sufficiency of the evidence, "[the appellate court] view[s] the evidence presented at trial in the light most favorable to the verdict[ ] and ask[s] whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crime[ ] of which he was convicted."[4] In doing so, "[the reviewing court] leave[s] to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts."[5]

As OCGA § 24-14-6 provides: "[t]o warrant a conviction on circumstantial evidence, the proved fact shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Whether the hypotheses are reasonable, however, are generally jury issues, with deference given to the jury's assessment of the weight and credibility of the evidence.[6]

---

[4] (Citation and punctuation omitted.) *Peacock v. State*, 314 Ga. 709, 714 (2) (b) (878 SE2d 247) (2022).

[5] *Smith v. State*, 308 Ga. 81, 84 (1) (839 SE2d 630) (2020); see also *Atkinson v. State*, 243 Ga. App. 570, 573 (1) (531 SE2d 743) (2000) (where officer acknowledged on cross-examination that not everything that looks like marijuana is marijuana, to the extent this amounted to contradictory testimony, the jury was authorized to reject that part and believe other parts of his testimony).

[6] *Willis v. State*, 304 Ga. 122, 125 (1) (816 SE2d 656) (2018).

We will not disturb the jury's finding that the evidence excluded every reasonable hypothesis other than the guilt of the defendant "unless it is insupportable as a matter of law."[7]

In *Chambers v. State*,[8] relied on by Hutchins, the defendant objected to the trial court's ruling that a police officer could testify as an expert in the identification of marijuana.[9] In this case, Hutchins did not object either to Davis's or Zimmerman's testimony identifying the pills as oxycodone based on comparison images using the pills' color, shape and logo. "[W]here, as was the case here, [witnesses] testif[y] to a conclusion of fact which could be within [their] knowledge and such testimony is admitted without objection, it cannot be attacked on review as being incompetent or insufficient."[10]

---

[7] (Citation and punctuation omitted.) *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019).

[8] 260 Ga. App. 48 (579 SE2d 71) (2003).

[9] See id. at 49.

[10] (Citations and punctuation omitted.) *Burg v. State*, 298 Ga. App. 214, 216-217 (679 SE2d 780) (2009).

Moreover, expert testimony based on scientific tests is generally not required to identify the substance at issue in a drug possession case.[11] Our decision in *Chambers*[12] is distinguishable because here there was additional evidence to support the jury's finding that the pills were oxycodone. Hutchins hid the pills with the marijuana and methamphetamine under the carpet at the center console before he finally pulled over for Deputy Howell a mile after Howell activated his blue lights.[13]

Even assuming the evidence against Hutchins on the oxycodone count was entirely circumstantial, the evidence authorized the jury to reject his alternative hypothesis as unreasonable. As recounted above, Hutchins was stopped after Deputy Howell observed him driving in a restricted area commonly used to drop contraband for prisoners. A search of the car revealed not just the pills in question, but marijuana

---

[11] See *Burg*, 298 Ga. App. at 216.

[12] 260 Ga. App. at 52 (1).

[13] See *Jones v. State*, 268 Ga. App. 246, 249 (1) (601 SE2d 763) (2004) ("The expert opinions of the officers — based on visual observation, and sometimes feel or smell — plus circumstantial evidence [that the defendant treated the substance as marijuana] is enough, even absent conclusive scientific testing."); see also *Kessinger v. State*, 298 Ga. App. 479, 480 (1) (680 SE2d 546) (2009) (holding that the evidence was sufficient to support conviction for possession of oxycodone where, in addition to witnesses' testimony that the pills' logo matched that of oxycodone tablets, the pills were contained in a prescription bottle labeled oxycodone).

and methamphetamine, as well as tobacco and cell phones that would be contraband in a prison. Thus, the evidence was sufficient under OCGA § 24-14-6 to support Hutchins's convictions.[14]

2. In a related argument, Hutchins argues that counsel was ineffective in failing to object to identification of the pills as oxycodone, thus waiving a claim of error for lack of foundation. Again, we disagree.

> To prevail on this claim, [Hutchins] must establish, pursuant to *Strickland v. Washington*,[15] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[16]

---

[14] See *Bilow v. State*, 262 Ga. App. 850, 851 (1) (586 SE2d 675) (2003) (even excluding crime lab reports identifying methamphetamine as nonprobative hearsay, there was still sufficient evidence upon which to convict defendant for possession of that drug based upon officers' detailed testimony identifying the substance and the materials and equipment necessary to manufacture it).

[15] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[16] (Additional citations and punctuation omitted.) *Eskew v. State*, 309 Ga. App. 44, 49 (5) (709 SE2d 893) (2011).

Hutchins's trial attorney testified at the motion for new trial hearing that he was concerned at trial with the charges as a whole. Counsel added that focusing on one item could have cost the defense credibility with the jury where there was no basis to exclude the evidence of the other drugs and contraband in the vehicle.

> In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result. Indeed, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.[17]

On cross-examination, trial counsel elicited testimony from Zimmerman, the forensic chemist, that she had seen counterfeit pills that appeared to be oxycodone with the pharmaceutical imprint but were determined to be something different on chemical testing. In closing arguments, counsel not only argued that Hutchins maintained that the items found in the front floorboard were not his, but also

---

[17] (Citation and punctuation omitted.) *Hong v. State*, 366 Ga. App. 476, 485 (5) (883 SE2d 426) (2023).

reminded the jury that the State had not done chemical testing on the pills to confirm that they were in fact oxycodone.

On this record, we cannot conclude that trial counsel's strategy not to object to the testimony identifying the pills as oxycodone, and to instead point out this weakness in the State's case, was unreasonable.[18] Because Hutchins has failed to show deficient performance, we need not address the prejudice prong of the *Strickland* test,[19] and this claim of error fails.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur.*

---

[18] See *Bowles v. State*, 362 Ga. App. 212, 216-217 (2) (867 SE2d 623) (2022).

[19] See *Eskew*, 309 Ga. App. at 49 (5) ("We need not address both components of the *Strickland* test if the showing on one is insufficient, nor must we address the components in any particular order.") (citation and punctuation omitted).